No. 23-10170

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

PAYCARGO, LLC,

Plaintiff-Appellee,

v.

CARGOSPRINT LLC and JOSHUA WOLF,

Defendants-Appellants.

On Appeal from the United States District Court
for the Southern District of Florida
Case No. 1:19-CV-22995-LOUIS

## ANSWER BRIEF FOR PLAINTIFF-APPELLEE

Peter Prieto
Matthew P. Weinshall
**Podhurst Orseck, P.A.**
One S.E. 3rd Avenue, Suite 2300
Miami, Florida 33131
305-358-2800

Ann G. Fort
**Eversheds Sutherland (US) LLP**
999 Peachtree St. NE, Suite 2300
Atlanta, GA 30309
404-853-8000

*Counsel for Plaintiff*

*PayCargo, LLC v. CargoSprint LLC,*
No. 23-10170

# CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Appellee, pursuant to 11th Cir. R. 26.1, submits this list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this appeal:

1. Atkins, Wayne (Counsel for Plaintiff-Appellee)

2. CargoSprint, LLC (Defendant-Appellant)

3. Del Riego, Alissa (Counsel for Plaintiff-Appellee)

4. Eversheds Sutherland (US) LLC (Counsel for Plaintiff-Appellee)

5. Farrior, Giulia C. (Counsel for Defendants-Appellants)

6. Fischer, Ury (Counsel for Defendants-Appellants)

7. Lott & Fischer, P.L. (Counsel for Defendants-Appellants)

8. Louis, Lauren F. (Magistrate Judge)

9. Moreno, Federico A. (District Judge)

10. PayCargo, LLC (Plaintiff-Appellee)

11. Podhurst Orseck, P.A. (Counsel for Plaintiff-Appellee)

12. Prieto, Peter (Counsel for Plaintiff-Appellee)

13. Rashkind, Noah H. (Counsel for Defendants-Appellants)

14. Smith, Dylan H. (Counsel for Defendants-Appellants)

*PayCargo, LLC v. CargoSprint LLC,*
No. 23-10170

15. Weber, Jason (Counsel for Plaintiff-Appellee)

16. Weinshall, Matthew P. (Counsel for Plaintiff-Appellee)

17. Xander Law Group, P.A. (Counsel for Plaintiff-Appellee)

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 through 26.1-3, , PayCargo, LLC does not have any parent corporation and no publicly held corporation owns 10% or more of PayCargo, LLC's stock.

*s/ Matthew P. Weinshall*
MATTHEW P. WEINSHALL

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff respectfully submits that oral argument is unnecessary to resolve this appeal, given the clarity of the record, the district court's findings of fact and conclusions of law, and governing legal authority.

**TABLE OF CONTENTS**

**Page**

STATEMENT REGARDING ORAL ARGUMENT ....................................i

INTRODUCTION ....................................................................... 1

STATEMENT OF JURISDICTION.................................................. 3

STATEMENT OF THE ISSUES..................................................... 4

STATEMENT OF THE CASE ....................................................... 5

    A.    Factual Background ......................................... 5

        1.    PayCargo And The PayCargo System ................ 5

        2.    PayCargo's Three Trademarks........................... 6

        3.    The Formation Of PayAirCargo ........................ 8

        4.    Marketplace Confusion From The PayAirCargo Name ............................................... 9

        5.    The Settlement Agreement................................. 9

        6.    Defendants' Violation Of The Settlement Agreement And Continued Use Of The PayAirCargo Name ........................................... 10

        7.    Defendants' Revenue From Infringement .......... 11

    B.    Procedural History............................................ 11

SUMMARY OF ARGUMENT .................................................... 14

ARGUMENT ......................................................................... 17

    I.    SUMMARY JUDGMENT FOR PAYCARGO ON ITS LANHAM ACT CLAIMS SHOULD BE AFFIRMED. .......... 17

    A.    The PayCargo Marks Are Not Generic ........................ 20

    B.    PayCargo Owns Its Registered Trademarks .............. 30

        1.    PayCargo Marks '315 and '112 Were Transferred from Coihue to PayCargo............... 31

        2.    Plaintiff Registered and Owns the PayCargo Mark '069............................................ 35

    C.    CargoSprint's Fraud Claims Fail As A Matter Of Law. ........................................................................ 38

        1.    PayCargo Did Not Fraudulently Misrepresent the Date the Marks Were First Used in Commerce ...................................... 39

        2.    The '315 Registration's Incontestable Status Was Not Fraudulently Obtained............. 47

        3.    The '069 Registration Was Not Procured By Fraud .............................................................. 50

II.    JUDGMENT IN FAVOR OF PAYCARGO ON ITS BREACH-OF-CONTRACT CLAIM SHOULD BE AFFIRMED.................................................................... 51

    A.    Defendants Have Waived Their Arguments On The Breach-Of-Contract Claim .................................... 51

    B.    Defendants' Affirmative Defenses Are Unavailing ................................................................... 56

III.    THE EXCLUSION OF DEFENDANTS' SALESFORCE DATABASE SHOULD BE AFFIRMED.................................................................... 60

IV.    THE AWARD OF ATTORNEYS' FEES SHOULD BE AFFIRMED ....................................................................... 66

CONCLUSION ............................................................................ 67

CERTIFICATE OF COMPLIANCE ......................................... 69

CERTIFICATE OF SERVICE ................................................ 70

# TABLE OF AUTHORITIES

<u>**Page(s)**</u>

## Cases

*Air Prod. & Chemicals, Inc. v. Louisiana Land & Expl. Co.*,
  806 F.2d 1524 (11th Cir. 1986) ............................................................58

*Al-Ghena Int'l Corp. v. Radwan*,
  698 F. App'x 997 (11th Cir. 2017)........................................................58

*Angel Flight Ga., Inc. v. Angel Flight Am., Inc.*,
  522 F.3d 1200 (11th Cir. 2008) ................................................38, 42, 50

*Arthur Rutenberg Corp. v. Pasin*,
  506 So. 2d 33 (Fla. Dist. Ct. App. 1987) ..............................................32

*Aycock Engineering, Inc. v. Airflite, Inc.*,
  560 F.3d 1350 (Fed. Cir. 2009) ............................................................49

*Bon Vivant Catering, Inc. v. Duke Univ.*,
  No. 1:13-cv-728, 2016 WL 3149725 (M.D.N.C. June 3, 2016) ............37

*Brady v. Carnival Corp.*,
  33 F.4th 1278 (11th Cir. 2022).................................................................5

*Brittingham v. Jenkins*,
  914 F.2d 447 (4th Cir. 1990) ................................................................50

*Burger King Corp. v. Mason*,
  855 F.2d 779 (11th Cir. 1988) ..............................................................65

*Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC*,
  605 F.3d 931 (11th Cir. 2010) ..............................................................22

*Carnival Brand Seafood Co. v. Carnival Brands, Inc.*,
  187 F.3d 1307 (11th Cir. 1999) ............................................................35

*Carrizosa v. Chiquita Brands Int'l, Inc.*,
  47 F.4th 1278 (11th Cir. 2022)..............................................................63

*Citibank, N.A. v. Citibank Group, Inc.*,
  724 F.2d 1540 (11th Cir. 1984) ........................................................... 27

*Commodores Entm't Corp. v. McClary*,
  879 F.3d 1114 (11th Cir. 2018) ....................................................... 37, 40

*Couture v. Playdom, Inc.*,
  778 F.3d 1379 (Fed. Cir. 2015) ...................................................... 41, 44

*Cuisinarts, Inc. v. Robot-Coupe Int'l Corp.*,
  580 F. Supp. 634 (S.D.N.Y. 1984) ....................................................... 48

*Dieter v. B & H Indus. of Sw. Fla., Inc.*,
  880 F.2d 322 (11th Cir. 1989) .................................................. 18, 19, 30

*Dupree v. Younger*,
  No. 22-210, 2023 WL 3632755 (U.S. May 25, 2023) ...................... 54, 55

*Engineered Tax Servs., Inc. v. Scarpello Consulting, Inc.*,
  958 F.3d 1323 (11th Cir. 2020) ......................................... 24, 25, 27, 29

*FCOA LLC v. Foremost Title & Escrow Servs. LLC*,
  57 F.4th 939 (11th Cir. 2023) .............................................................. 30

*Foster v. Ford Motor Co.*,
  621 F.2d 715 (5th Cir. 1980) ............................................................... 65

*Frehling Enterprises, Inc. v. Int'l Select Grp., Inc.*,
  192 F.3d 1330 (11th Cir. 1999) ........................................................... 18

*Happy Feet USA, Inc. v. Burch*,
  No. 6:09-cv-1903, 2010 WL 11626536 (M.D. Fla. Apr. 2, 2010) .......... 34

*Ibarra v. Izaguirre*,
  985 So.2d 1117 (Fla. Dist. Ct. App. 2008) ........................................... 57

*In re Bose Corp.*,
  580 F.3d 1240 (Fed. Cir. 2009) ......................................... 40, 42, 43, 44

*In re Sendecky*,
  283 B.R. 760 (B.A.P. 8th Cir. 2002) .................................................... 48

*Johnson v. Johnson,*
    725 So.2d 1209 (Fla. Dist. Ct. App. 1999) ............................................ 33

*Lahoti v. Vericheck, Inc.,*
    636 F.3d 501 (9th Cir. 2011) ................................................................ 27

*Lind v. United Parcel Serv., Inc.,*
    254 F.3d 1281 (11th Cir. 2001) ................................................. 53, 54, 56

*Liquid Controls Corp. v. Liquid Control Corp.,*
    802 F.2d 934 (7th Cir. 1986) ................................................................ 24

*Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.,*
    122 F.3d 1379 (11th Cir.1997) ............................................................. 18

Nationstar Mortgage LLC v. Ahmad,
    112 U.S.P.Q.2d 1361, 2014 WL 6480655 (T.T.A.B. Sept. 30, 2014).... 46

*NetJets Inc. v. IntelliJet Grp.,* LLC,
    678 F. App'x 343 (6th Cir. 2017) .......................................................... 49

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.,*
    572 U.S. 545 (2014).............................................................................. 67

*Orient Exp. Trading Co., Ltd. v. Federated Dept. Stores, Inc.,*
    842 F.2d 650 (2d Cir. 1988).................................................................. 20

*Ortiz v. Jordan,*
    562 U.S. 180 (2011).............................................................................. 53

*Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.,*
    469 U.S. 189 (1985).............................................................................. 22

*PayPal, Inc. v. PayPay, Inc.,*
    C-09-4494 EMC, 2010 WL 11706796 (N.D. Cal. July 27, 2010).......... 28

*Planetary Motion, Inc. v. Techsplosion, Inc.,*
    261 F.3d 1188 (11th Cir. 2001) ............................................................ 41

*Ross Bicycles, Inc. v. Cycles USA, Inc.,*
    765 F.2d 1502 (11th Cir. 1985) ............................................................ 18

*Royal Palm Properties, LLC v. Pink Palm Properties, LLC,
  950 F.3d 776 (11th Cir. 2020) ........................................21, 29

Rudick v. Rudick,
  403 So. 2d 1091 (Fla. Dist. Ct. App. 1981) ...........................58

Sapuppo v. Allstate Floridian Ins. Co.,
  739 F.3d 678 (11th Cir. 2014) ............................................65

Setai Hotel Acquisition, LLC v. Miami Beach Luxury Rentals, Inc.,
  No. 16-21296-CIV, 2017 WL 3503371 (S.D. Fla. Aug. 15, 2017).........34

Somera Cap. Mgmt., LLC v. Somera Rd., Inc.,
  No. 19-CIV-8291, 2020 WL 2506352 (S.D.N.Y. May 15, 2020) ..........49

Sonista, Inc. v. Hsieh,
  348 F. Supp. 2d 1089 (N.D. Cal. 2004) ................................34

*Sovereign Military Hospitaller v. Fla. Priory,
  702 F.3d 1279 (11th Cir. 2012) .........................40, 42, 44, 51

Sovereign Order St. John v. Grady,
  119 F.3d 1236 (6th Cir. 1997) ...........................................51

Spiral Direct, Inc. v. Basic Sports Apparel, Inc.,
  293 F. Supp. 3d 1334 (M.D. Fla. 2017)..................................45

St. Luke's Cataract & Laser Inst., P.A. v. Sanderson,
  573 F.3d 1186 (11th Cir. 2009) ..........................................27

Synergistic Int'l, LLC v. Korman,
  470 F.3d 162 (4th Cir. 2006) ............................................27

Tobinick v. Novella,
  884 F.3d 1110 (11th Cir. 2018) ..........................................67

Two Pesos, Inc. v. Taco Cabana, Inc.,
  505 U.S. 763 (1992)......................................................19

U.S. Football League v. Nat'l Football League,
  842 F.2d 1335 (2d Cir. 1988)............................................62

viii

*U.S. Pioneer Elec. Corp. v. Evans Mktg., Inc.*,
  1974 WL 20033, 183 U.S.P.Q. 613, 614 (P.T.O. Oct. 16, 1974) .......... 37

*\*United States Pat. & Trademark Off. v. Booking.com B. V.*,
  140 S. Ct. 2298 (2020) ................................................................. passim

*United States v. Stephens*,
  365 F.3d 967 (11th Cir. 2004) ................................................ 60

*United States v. Todd*,
  108 F.3d 1329 (11th Cir. 1997) .............................................. 60

*United States v. Winkle*,
  587 F.2d 705 (5th Cir. 1979) .................................................. 61

*Vision Ctr. v. Opticks, Inc.*,
  596 F.2d 111 (5th Cir. 1979) .................................................. 24

*Welding Servs., Inc. v. Forman*,
  509 F.3d 1351 (11th Cir. 2007) ......................................... 21, 22

*Wesco Mfg., Inc. v. Tropical Attractions of Palm Beach, Inc.*,
  833 F.2d 1484 (11th Cir. 1987) .............................................. 63

*Whetstone Candy Co. v. Kraft Foods, Inc.*,
  351 F.3d 1067 (11th Cir. 2003) .............................................. 33

*Wilhelm Pudenz, GmbH v. Littlefuse, Inc.*,
  177 F.3d 1204 (11th Cir. 1999) .............................................. 49

*Wolowitz v. Thoroughbred Motors, Inc.*,
  765 So. 2d 920 (Fla. Dist. Ct. App. 2000) .............................. 60

*Zurstrassen v. Stonier*,
  786 So.2d 65 (Fla. Dist. Ct. App. 2001) ................................. 58

## Statutes

15 U.S.C. § 1064 ......................................................... 39, 48, 49

15 U.S.C. § 1065 ............................................................. 29, 35

15 U.S.C. § 1115 ....................................................................35, 39, 43

15 U.S.C. § 1117 ...............................................................14, 20, 66, 67

15 U.S.C. § 1125 .................................................................4, 17, 18, 19

15 U.S.C. § 1127 ..........................................................................31, 41

28 U.S.C. § 1291 ..................................................................................3

28 U.S.C. § 1331 ..................................................................................3

28 U.S.C. § 1367 ..................................................................................4

## Other Authorities

37 C.F.R. § 2.111 ...............................................................................49

37 C.F.R. § 2.71 .................................................................................37

Fed. R. Evid. 103 .........................................................................60, 61

Fed. R. Evid. 403 ..............................................................................62

Trademark Manual of Examination Practice, § 707.01 .........................36

## INTRODUCTION

This appeal involves an unusually clear case of trademark infringement.  Plaintiff-Appellee PayCargo, LLC runs an industry-leading web-based settlement platform to facilitate freight payments and data transfers.  Attempting to capitalize on PayCargo's success, Defendant-Appellant Joshua Wolf founded a company called PayAirCargo, LLC (also a Defendant-Appellant, and now known as CargoSprint), after using PayCargo's platform.  The two companies quickly became direct competitors, with substantial overlap among their customers.  Unsurprisingly, the similarity between the companies' names caused widespread confusion among their customers.

When PayCargo discovered this, it attempted to reach an amicable resolution, without litigation.  The parties ultimately entered into a settlement agreement that required Defendants to cease using the PayAirCargo name.  But Defendants did not comply with the agreement.  Although PayAirCargo changed its formal name to CargoSprint, Defendants continued to use the name PayAirCargo for several years, across hundreds of thousands of transactions, until Plaintiff filed this action for breach of contract and violation of the Lanham Act, and the

1

district court entered a preliminary injunction. Even then, Defendants repeatedly violated the injunction and were twice found in contempt.

Given the clarity of the record, the district court entered summary judgment for Plaintiff on liability under the Lanham Act. It then conducted a bench trial on the disgorgement remedy under the Lanham Act and Plaintiff's breach-of-contract claim.

Before the court issued its decision, however, it came to light that Defendants fabricated certain invoices relating to the costs they claimed to have incurred and thus sought to use to reduce the disgorgement award. After holding another evidentiary hearing, the court found—and Defendants do not dispute on appeal—that Defendants engaged in a bad-faith, intentional fraud on the court and sanctioned them by excluding their evidence pertaining to costs. The court then issued its findings of fact and conclusions of law and entered judgment in favor of Plaintiff.

With abundant evidence in the record demonstrating actual confusion flowing from Defendants' willful infringement of Plaintiff's trademarks, Defendants have no good arguments to challenge the judgment on appeal. So, Defendants fire a long shot, claiming that the name PayCargo is a generic term, entirely ineligible for protection under

the Lanham Act. Binding authority from the Supreme Court, however, precludes this attack. Defendants also search for technical flaws with Plaintiff's trademark registrations but find no support in the record. Defendants then challenge the disgorgement award by objecting to the exclusion of largely irrelevant, cumulative evidence from their Salesforce database, but Defendants cannot demonstrate an abuse of discretion, let alone reversible error. Finally, Defendants appeal the award of attorneys' fees to Plaintiff, but the district court's decision comports with prevailing law.

For these reasons and others discussed below, this Court should affirm the judgment.

## STATEMENT OF JURISDICTION

This Court has appellate jurisdiction under 28 U.S.C. § 1291 for an appeal from a final judgment. App.366.[1] The district court had subject matter jurisdiction under 28 U.S.C. § 1331 for Plaintiff's Lanham Act

---

[1] "App.__" refers to the Appendix, specified tab, and if applicable, page number. "Doc.__" similarly refers to docket entries that were not included in Defendants' Appendix. Plaintiff will submit a Supplemental Appendix with these additional docket entries. And "Br.__" refers to Defendants' initial brief.

claims and supplemental jurisdiction under 28 U.S.C. § 1367(a) for Plaintiff's breach-of-contract claims.

## STATEMENT OF THE ISSUES

1.    Whether the district court correctly granted Plaintiff summary judgment on its Lanham Act claims.

2.    Whether the district court correctly entered judgment for Plaintiff, following a bench trial, on its breach-of-contract claim.

3.    Whether the district court abused its discretion in declining to admit Defendants' entire Salesforce database as a trial exhibit.

4.    Whether the district court abused its discretion in awarding Plaintiff attorneys' fees under the Lanham Act.

4

## STATEMENT OF THE CASE

### A.    Factual Background[2]

### 1.    PayCargo And The PayCargo System

PayCargo, LLC was established on November 12, 2008, with the goal of developing a web-based platform to facilitate freight payments and data transfers.  App.161, ¶¶ 1-3.  The company invested significant time and resources to develop the PayCargo System, which became the first of its kind in the industry.  *Id.*

Before PayCargo's formation, Coihue LLC had used the PayCargo name for a settlement platform it was developing and marketing.  App.161, ¶ 4.  As early as 2003, Coihue started using the PayCargo name with what eventually became the PayCargo System.  *Id.*  On November 20, 2008, Coihue and another company entered into the Limited Liability Company Agreement of PayCargo, LLC, to create a joint venture "for the purpose of creating an electronic settlement system which will enable the

---

[2] Where relevant to summary judgment, the following facts and reasonable inferences drawn therefrom are presented in the light most favorable to Defendants, the non-moving party. *Brady v. Carnival Corp.*, 33 F.4th 1278, 1281 (11th Cir. 2022).

5

processing and facilitation of payments related to the transportation of cargo or for transported cargo," among other purposes. *Id.*, ¶ 8.

## 2. PayCargo's Three Trademarks

Coihue registered the first PayCargo trademark, bearing registration number 3,347,315 ("Mark '315"), with the United States Patent and Trademark Office ("PTO") on December 4, 2007. App.161, ¶ 5.[3] It registered the second trademark, bearing registration number 3,519,112 ("Mark '112"), on October 21, 2008. *Id.*, ¶ 6.[4] Coihue's CFO, Eugenio Crespo, who handled the trademark applications, lacked formal training in intellectual property law, and English was his second language. *Id.*, ¶ 7.

PayCargo became the owner of Marks '315 and '112 through an assignment recorded at the PTO in May 2010. App.161, ¶ 9. The

---

[3] Mark '315 issued for "computer e-commerce software to allow to perform electronic business transactions in the field of freight billing." App.18-6 at 38.

[4] The services specified in Mark '112 include: "information management in the nature of financial records management for the freight industry through electronic means," and "electronic processing and transmission of bill payment data for the freight industry." App.18-4 at 50.

assignment stated that its effective date was November 20, 2008, *nunc pro tunc* (the "*Nunc Pro Tunc* Assignment"). App.161, ¶ 9.

Subsequently, on January 4, 2011, PayCargo registered a third trademark, bearing registration number 3,900,069 ("Mark '069," and collectively, with Mark '315 and Mark '112, the "PayCargo Marks" or the "Marks"). App. 161, ¶ 10.[5] Prior to the registration of the third Mark, in early 2009, the PayCargo System began executing transactions for paying customers. *Id.*

All three trademark applications identified 2003 as the PayCargo Marks' date of first use in commerce, because that was when the founders of PayCargo (and its predecessor) began using the name in test transactions and presentations with investors and potential customers. App.161, ¶ 11. All three Marks have incontestable status recorded by the PTO. App.171, ¶ 70.

The following chart summarizes registration data of the three PayCargo Marks:

_____

[5] The services specified in Mark '069 and Mark '112 are the same, but Mark '069 consists of a stylized logo design for the term PayCargo. App.18-5 at 25.

7

| Mark | Registration No. | Registration Date | 15 U.S.C. § 1065 Status |
|---|---|---|---|
| PAYCARGO | 3,519,112 | October 21, 2008 | Incontestable |
| ➤PayCargo | 3,900,069 | January 4, 2010 | Incontestable |
| PAYCARGO | 3,347,315 | December 4, 2007 | Incontestable |

### 3.    The Formation Of PayAirCargo

Defendant Joshua Wolf was aware of PayCargo's existence before starting his own company.  Doc.238, ¶ 13.  While working at a freight forwarding company, he had visited the PayCargo website and had been approached by a PayCargo salesperson, who explained PayCargo's services.  *Id.*, ¶¶ 14-15.  In August 2011, Wolf registered on the PayCargo System under his employer's name.  *Id.*, ¶ 16.  Several months later, in 2012, Wolf founded Defendant PayAirCargo, LLC (now CargoSprint).  *Id.*, ¶¶ 17, 20.  He later admitted in an email that he "wish[ed] [he] could have PayCargo's name."  *Id.*, ¶ 19.

PayCargo and PayAirCargo quickly became competitors.  *Id.*, ¶ 22.  Both companies serve the logistics industry with web-based freight payment platforms and cater to similar customers, sharing approximately 85% of their payer customer base.  *Id.*, ¶¶ 22, 24.

8

### 4. Marketplace Confusion From The PayAirCargo Name

Defendants' use of the PayAirCargo name caused widespread actual confusion among customers, which only increased over time. App.161, ¶ 27. Defendants were aware of this confusion as early as 2013. *Id.* Defendants' internal emails acknowledge that the name similarity was responsible for the confusion, which Defendants found humorous, encouraged, and sought to take advantage of. *Id.*, ¶¶ 28-33.

In 2015, PayCargo learned of PayAirCargo and attempted to address the issue by initiating discussions about a potential merger or acquisition. *Id.*, ¶ 35. But the confusion persisted, so PayCargo sent Defendants a cease-and-desist letter on August 19, 2016. *Id.*, ¶ 36.

### 5. The Settlement Agreement

In December 2016, PayCargo and Defendants entered into a settlement agreement, requiring Defendants to cease using the PayAirCargo name. *Id.*, ¶ 37. The agreement specified a wide array of actions Defendants were required to take to remove PayAirCargo from all operations and use. *Id.*, ¶ 39. The agreement also included a release that was ""[c]ontingent upon the faithful completion by [Defendants] of their obligations under this Agreement." *Id.*, ¶ 40.

9

### 6. Defendants' Violation Of The Settlement Agreement And Continued Use Of The PayAirCargo Name

Defendants failed to comply with the settlement agreement. *Id.*, ¶¶ 43-45. Although PayAirCargo formally changed its name to CargoSprint, Defendants continued using the PayAirCargo name on invoices, emails, and various platforms, perpetuating confusion in the marketplace. *Id.*, ¶¶ 43-45. The continued use was far from insignificant, as Defendants issued approximately 455,000 invoices between May 31, 2017, and July 17, 2018, with the PayAirCargo name. *Id.*, ¶ 45.

Upon learning of Defendants' violation of the agreement, Plaintiff sent Defendants a second cease-and-desist letter on July 10, 2018. *Id.*, ¶ 44. Likewise, on July 23, 2018, Plaintiff requested an assurance from Defendants that "PayAirCargo is no longer being used in any capacity at this time," which Defendants provided on July 25, 2018. *Id.*, ¶ 46. This assurance, however, was not accurate; Defendants continued to use PayAirCargo in emails, on social media, in accounting records, and on payment platforms. *Id.*, ¶¶ 46-52, 58-65.

As a result, customer confusion persisted. *Id.*, ¶¶ 72-73. This confusion damaged PayCargo's reputation and drained PayCargo's resources. *Id.*, ¶¶ 74-75.

### 7. Defendants' Revenue From Infringement

From inception through 2020, CargoSprint earned approximately $23 million in net fee revenue. App.354 at 11. Approximately $20 million of this revenue was derived from customers acquired when CargoSprint operated as PayAirCargo. *Id.* Defendants' costs reasonably ascertainable and attributable to the infringing business were $4,920,538. *Id.*

### B. Procedural History

PayCargo filed this lawsuit in July 2019. App.1. The operative complaint is the Second Amended Complaint, which asserts claims for infringement of the three PayCargo Marks under the Lanham Act, 15 U.S.C. § 1114 (Counts I-III); breach of contract (Count IV); unfair competition under the Lanham Act, 15 U.S.C. § 1125(a) (Count V); and unfair competition under Florida law (Count VI). App.100.

On October 2, 2019, PayCargo moved for a preliminary injunction seeking, amongst other things, to enjoin Defendants from further use of

the PayAirCargo name and to order an accounting and freezing of financial accounts. App.18. After an evidentiary hearing (App.68), the court partially granted PayCargo's motion (App.69; App. 85). The court enjoined Defendants from using the PayAirCargo name in commerce, ordered the transfer of the payaircargo.com domain name from Defendants to Plaintiff, and ordered the Parties to preserve all documents reflecting Defendants' actual or intended use of Plaintiff's Marks and Defendants' sales, revenues, and profits. App.85 at 17-19.

The parties then engaged in discovery, during which Defendants were held in contempt for failing to make reasonable, good-faith efforts to comply with the court's injunction. App.150. On April 2, 2021, the parties moved for partial summary judgment. App.162; App.164. After full briefing on the motions (App.172; App.174; App.178; App.186) and oral argument (App.242), Defendants' motion for partial summary judgment was denied (App.244), and PayCargo's motion for partial summary judgment was granted in part and denied in part (App.267). Specifically, the court granted PayCargo summary judgment as to liability on its trademark-infringement claims (Counts I-III) and federal unfair-competition claim (Count V), with a disgorgement-of-profits

award to be determined at trial, but it denied PayCargo's request for summary judgment on its breach-of-contract claim (Count IV). App.267. Thus, a bench trial proceeded on PayCargo's breach-of-contract claim (Count IV) and the disgorgement award for PayCargo's Lanham Act claims (Counts I-III and V).[6]

After trial but before the court entered its findings of fact and conclusions of law, Plaintiff moved for an order to show cause whether certain invoices that Defendants produced in discovery had been altered to remove the term PayAirCargo, and if so, whether Defendants should be sanctioned. Doc.284; Doc.300. The court held an evidentiary hearing, after which it issued a Second Contempt Order. App.353. The court found that Defendants had fabricated evidence, in violation of the preliminary injunction, and that Defendants' conduct, which the court described as "an intentional fraud on the court," warranted a finding of bad faith. *Id.* at 11. The fabricated invoices were particularly significant because they pertained to a motion that Plaintiff had filed to exclude evidence of Defendants' costs, which the court said it would have granted

---

[6] The final claim of unfair competition under Florida law (Count VI) was also tried but voluntarily dismissed. *See* Doc.313 at 92:6-98:17; 98:23-99:5.

had it "known then what has now come to light" regarding the altered documents. *Id.* at 14. As a result of this contempt finding, the district court excluded Defendants' evidence pertaining to costs as a sanction. *Id.*

The court then issued its findings of fact and conclusions of law. App.354. The court found in favor of Plaintiff and against Defendants on the breach-of-contract claim (Count IV); that Plaintiff is entitled to damages on the Lanham Act claims (Counts I, II, III, and V) in the amount of $11,591,277.50; that Plaintiff is entitled to prejudgment interest; and that the case is exceptional under 15 U.S.C. § 1117, and thus Plaintiff is entitled to an award of attorneys' fees. *Id.* at 20-21. After the parties stipulated to the amount of interest and attorneys' fees, the court entered final judgment against Defendants on December 16, 2022. App.366. Defendants filed a notice of appeal on January 13, 2023. App.369.

## SUMMARY OF ARGUMENT

This Court should affirm the district court's grant of summary judgment in favor of Plaintiff on its Lanham Act claims. Defendants' primary argument is that PayCargo is a generic term, ineligible for any protection under the Lanham Act. But PayCargo is not the name of a

14

class of services, as the genericism standard requires.  Unable to present any evidence that PayCargo signifies to consumers an entire category of services, as opposed to a particular service provider, Defendants turn to dictionary definitions of the separate words "pay" and "cargo."  But this Court has rejected Defendants' approach, emphasizing that the focus must be on the compound term "PayCargo" and actual evidence of its use, not just dictionary definitions pieced together.  Defendants cannot carry their burden of demonstrating that PayCargo is generic.

Defendants' alternative attacks on Plaintiff's Lanham Act claims take issue with the registration and ownership of the PayCargo Marks, accusing Plaintiff of defrauding the PTO in the registration process and contending that the Assignment involving Coihue and PayCargo to transfer the Marks does not mean what it says.  These arguments lack support in the record.  They also carry little practical significance, because they only concern Plaintiff's trademark infringement claims, not its unfair competition claim.  Other than the genericism attack, Defendants advance no other argument against the unfair competition claim. And Defendants do not and cannot dispute that affirming

15

summary judgment for Plaintiff on the unfair competition claim is sufficient on its own to sustain the disgorgement award.

This Court should also affirm the district court's judgment on the breach-of-contract claim. Defendants contend that their affirmative defenses should have defeated Plaintiff's claim. But Defendants have waived these arguments, because they only attack the district court's denial of summary judgment, not the court's subsequent ruling after trial. Regardless, their affirmative defenses lack any record support.

This Court should also affirm the district court's exclusion of Defendants' undifferentiated Salesforce database spanning 60 gigabytes. Defendants failed to preserve their objection because they did not provide an adequate proffer of what the database would have shown. Nor have Defendants demonstrated that the district court abused its discretion, for Rule 403 authorizes the exclusion of such a cumulative, unruly collection of largely irrelevant data. And Defendants cannot possibly show that the exclusion affected their substantial rights, as Defendants conceded that the record already contained the relevant parts of the database, and in either event, the court provided an alternative rationale for the

exclusion—as a sanction for Defendants' fabrication of evidence—that Defendants declined to challenge.

Finally, the Court should affirm the award of attorneys' fees to Plaintiff. The Lanham Act vests the district court with discretion to award fees in exceptional cases. The court acted well within its discretion in finding that Defendants' willful, pervasive, and relentless infringement, together with their litigation misconduct, made this case exceptional and warranted an award of fees.

## ARGUMENT

## I.   SUMMARY JUDGMENT FOR PAYCARGO ON ITS LANHAM ACT CLAIMS SHOULD BE AFFIRMED.

Plaintiff asserted four claims against Defendants under the Lanham Act. The first three claims (Counts I-III) alleged that Defendants infringed each of Plaintiff's three registered trademarks, in violation of 15 U.S.C. § 1114(1). The fourth claim (Count V) alleged that Defendants engaged in unfair competition, in violation of 15 U.S.C. § 1125.

A defendant is liable for infringement under 15 U.S.C. § 1114(1) if, without consent, it uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark" which "is likely to cause

confusion, or to cause mistake, or to deceive." Thus, to prevail, "the plaintiff must show, first, that its mark is valid and, second, that the defendant's use of the contested mark is likely to cause confusion." *Dieter v. B & H Indus. of Sw. Fla., Inc.*, 880 F.2d 322, 326 (11th Cir. 1989).

Likewise, under § 1125(a)(1), a defendant is liable for unfair competition if it "uses in commerce any word, term, name, symbol, or device" which "is likely to cause confusion, or to cause mistake, or to deceive." Thus, to prevail on a § 1125 claim, a plaintiff must demonstrate (1) that its mark has priority and (2) that the defendant's mark is likely to cause consumer confusion. *See Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 122 F.3d 1379, 1382 (11th Cir.1997).

Claims under § 1114 and § 1125 are similar but not identical. The factors relevant to establishing a likelihood of confusion with respect to both claims are the same. *Ross Bicycles, Inc. v. Cycles USA, Inc.*, 765 F.2d 1502, 1503–04 (11th Cir. 1985).[7] So too are the "general principles"

---

[7] These factors are: 1. Type of mark; 2. Similarity of mark; 3. Similarity of the products the marks represent; 4. Similarity of the parties' retail outlets (trade channels) and customers; 5. Similarity of advertising media; 6. Defendant's intent; 7. Actual confusion. *Frehling Enters., Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999). The type of mark and the evidence of actual confusion are the most

*Continued on next page.*

for determining whether a mark is entitled to protection. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). But the claims differ in that § 1114 is limited to registered trademarks, while § 1125 also covers unregistered trademarks. *Id.*

Defendants challenge various aspects of the district court's ruling on summary judgment. *See* Br.21-42.[8] They first attack the distinctiveness of the PayCargo Marks, claiming that the Marks are generic and thus not entitled to protection under the Lanham Act. *See* Br.21-29. This argument applies to all of Plaintiff's Lanham Act claims, and indeed is the sole argument that Defendants raise against summary judgment on Plaintiff's unfair competition claim (Count V). Defendants' two other arguments—contesting Plaintiff's ownership of the registered PayCargo Marks (Br.29-35) and accusing Plaintiff of procuring the trademark registrations through fraud (Br.35-42)— only apply to Plaintiff's trademark infringement claims (Counts I-III) and are

_____

important factors. *See Dieter*, 880 F.2d at 326.

[8] Notably, however, Defendants do not challenge the district court's overall conclusion that Defendants' use of the "PayAirCargo" mark created a strong likelihood of confusion, given the abundant evidence of actual confusion among customers. App.267 at 14-15.

irrelevant to Plaintiff's unfair competition claim (Count V). *See Orient Exp. Trading Co., Ltd. v. Federated Dept. Stores, Inc.*, 842 F.2d 650, 654 (2d Cir. 1988) ("Even if appellants' registered marks are cancelled [for fraud], however, the use of the name Orient Express could still be protected from unfair competition under section 43(a) of the Lanham Act, . . . .").

Defendants do not and cannot dispute that affirming summary judgment for Plaintiff on the unfair competition claim (Count V) is sufficient to sustain the disgorgement award under 15 U.S.C. § 1117(a) (providing for recovery of "defendant's profits" for either "a violation of any right of the registrant of a mark" or "a violation under [§] 1125(a) or (d)"). Nonetheless, Plaintiff will address Defendants' attacks concerning all four Lanham Act claims. As explained below, none of Defendants' arguments have merit or warrant disturbing summary judgment in favor of Plaintiff.

## A.    The PayCargo Marks Are Not Generic

Defendants contend that the PayCargo Marks are ineligible for protection under the Lanham Act because they are generic. Br.22-29. The district court properly rejected Defendants' argument at summary

20

judgment.  App.267 at 13-14.  As Defendants now concede, there are no genuine disputes of fact bearing on this question.  Br.29.[9]  And as explained below, the district court's ruling comports with prevailing law.

"Under the Lanham Act, federal trademark protection is available only to distinctive marks—marks that serve the purpose of identifying the source of . . . goods or services." *Royal Palm Props., LLC v. Pink Palm Props., LLC*, 950 F.3d 776, 782 (11th Cir. 2020) (quotation marks omitted).  In this Circuit, marks are classified into four categories of distinctiveness, "in descending order of strength: (1) fanciful or arbitrary, (2) suggestive, (3) descriptive, and (4) generic." *Id.* (quotation marks omitted).

"An arbitrary or fanciful mark bears no logical relationship to the product or service it is used to represent." *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1357–58 (11th Cir. 2007). "A suggestive mark refers to

---

[9] Given Defendants' position that there "is no genuine dispute" of fact and that resolving the issue at summary judgment is appropriate, Defendants' alternative argument that summary judgment should be vacated so that the "trier of fact" can resolve the issue (Br.28-29) makes little sense.  Defendants fail to identify any factual disputes for a trier of fact to decide.  And the absence of any evidence supporting Defendants' genericism claim entitles Plaintiff to judgment as a matter of law on the issue.

21

some characteristic of the goods, but requires a leap of the imagination to get from the mark to the product." *Id.* "A descriptive mark identifies a characteristic or quality of the service or product." *Id.* And "[a] generic term is one that refers to the genus of which the particular product is a species." *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194 (1985).

On appeal, Defendants have abandoned any argument that the Marks are merely descriptive and limit their distinctiveness challenge to the claim that the Marks are generic. Br.21-29.[10] Defendants' genericism arguments, however, fail as a matter of law.

The Supreme Court clarified the meaning of genericism in *United States Pat. & Trademark Off. v. Booking.com B. V.*, 140 S. Ct. 2298 (2020). The Court identified three "guiding principles." *Id.* at 2304. "First, a 'generic' term names a 'class' of goods or services, rather than any particular feature or exemplification of the class." *Id.* Second—of particular relevance here—"for a compound term, the distinctiveness inquiry trains on the term's meaning as a whole, not its parts in

---

[10] *See Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC*, 605 F.3d 931, 941 (11th Cir. 2010) ("We deem issues not clearly briefed on appeal to be abandoned . . . .").

isolation." *Id.* And third, "the relevant meaning of a term is its meaning to consumers." *Id.*

Under these principles, whether "PayCargo" is generic "turns on whether that term, taken as a whole, signifies to consumers the class of [online settlement] services [and platforms to facilitate freight payments and data transfers in the commercial freight industry]." *Id.* Thus, if PayCargo were generic, "we might expect consumers to understand [CargoSprint] . . . to be a ['PayCargo']." *Id.* "We might similarly expect that a consumer, searching for a trusted source of online [settlement] services [and platforms in the commercial freight industry], could ask a [colleague] to name her favorite ['PayCargo'] provider." *Id.* at 2304-05.

Defendants presented no evidence at all that "PayCargo" ever acquired such a generic meaning among consumers. No surveys. No documents. No testimony. Nothing in the record remotely suggests that "PayCargo" signifies to any consumers an entire class or genus of online settlement platforms within the commercial freight industry.

Instead, Defendants rely primarily on dictionary definitions of the separate components of "PayCargo." Br.27-28. But this approach conflicts with the Supreme Court's directive that, "for a compound term,

23

the distinctiveness inquiry trains on the term's meaning as a whole, not its parts in isolation." *Booking.com*, 140 S. Ct. at 2304. It also suffers from the same flaw identified in *Engineered Tax Servs., Inc. v. Scarpello Consulting, Inc.*, 958 F.3d 1323 (11th Cir. 2020), in which this Court rejected reliance on "dictionary definitions of the mark's constituent terms," reasoning that "the whole can indeed be greater than the sum of its parts—'ordinary words can be combined in a novel or unique way and thereby achieve a degree of protection denied to the words when used separately.'" *Id.* at 1329 (quoting *Vision Ctr. v. Opticks, Inc.*, 596 F.2d 111, 116 (5th Cir. 1979)).[11] Defendants' heavy reliance on dictionary definitions of individual words, therefore, is unavailing.

Nor can Defendants find support in the Supreme Court's comment that "[a] compound of generic elements is generic if the combination yields no additional meaning to consumers capable of distinguishing the goods or services." *Booking.com*, 140 S. Ct. at 2306. The Court made

---

[11] The heavy reliance on dictionary definitions of component terms in *Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934, 938 (7th Cir. 1986), which Defendants cite, is difficult to reconcile with *Booking.com* and *Engineered Tax*. The case is also distinguishable, because the registrant's devices were "liquid controls," the actual generic term, *id.*, whereas Plaintiff's service is not a "PayCargo."

clear that it was rejecting the PTO's "nearly *per se* rule" that would classify combinations of generic elements as generic compound terms. *Id.* at 2305. Such an "unyielding legal rule that entirely disregards consumer perception," the Court reasoned, "is incompatible" with the Lanham Act. *Id.* at 2306. Instead, whether any given combination of generic elements yields a generic term "depends on whether consumers in fact perceive that term as the name of a class." *Id.* at 2307. Defendants, however, point to no evidence indicating that consumers "in fact perceive" PayCargo "as the name of a class" of services. *Id.*

Indeed, it is telling that Defendants "didn't put into evidence a single example in which the entire [term] ['PayCargo'] is used unambiguously to refer to" online settlement platforms within the commercial freight industry. *Engineered Tax Servs.*, 958 F.3d at 1332. Instead, Defendants had to add other words—such as "fees" and "for"— to the separate components of the compound term "PayCargo" to make their argument. *See* Br.26 ("can help to quickly 'pay cargo' *fees*") (emphasis added); *id.* at 27 ("help customers to 'pay cargo' *fees*") (emphasis added); *id.* at 28 ("pay *for* cargo shipments") (emphasis

altered).[12]  This is because the compound term "PayCargo," itself, is not

the generic name for any service or product, foreclosing Defendants'

genericism claim.

Nor does "PayCargo" describe the actual services offered by

Plaintiff, which include, as stated in the trademark registrations:

- Information management in the nature of financial records management for the freight industry through electronic means;

- Financial records management services, namely, matching of cash and credit card transactions data with invoices and orders through electronic means;

- Customer service in the field of non-legal invoice and related billing online dispute resolution;

- Electronic payment, namely, electronic processing and transmission of bill payment data for the freight industry;

- Processing and transmission of cash and credit card transaction data through electronic means;

- Provision and management of credit loans through electronic means; and

- Computer e-commerce software to enable electronic business transactions in the field of freight billing.

---

[12] Likewise, Defendants find no support in references to an "electronic cargo payment system" in the parties' settlement agreement, which Defendants ultimately breached.  *See* Br.28 (citing Doc.169, ¶ 49, which references App.100-8).  An "electronic cargo payment system" is another example of separate parts or different versions of the term, not the Mark itself.

*See* App.100-2; App.100-3; App.100-4. The PayCargo Marks require a "necessary imaginative leap" to understand that Plaintiff is the provider of an online settlement platform that performs this array of services. *Engineered Tax. Servs.*, 958 F.3d at 1330. This imaginative step "is sufficient" to make the PayCargo Marks suggestive, and thus entitled to protection under the Lanham Act. *Id.*

Far from being generic, the PayCargo Marks are comparable to those that this Court and others have held to be suggestive. *See*, *e.g., St. Luke's Cataract & Laser Inst., P.A. v. Sanderson*, 573 F.3d 1186, 1208 (11th Cir. 2009) (concluding "laser specialist" could refer to multiple types of services and thus could be suggestive); *Citibank, N.A. v. Citibank Grp., Inc.*, 724 F.2d 1540, 1545 (11th Cir. 1984) (finding "Citibank" was suggestive because "[t]he most that can be said for City Bank is that it *suggests* a modern or urban bank" and thus "indicates not a type of service, but a provider of that service") (emphasis in original); *Lahoti v. Vericheck, Inc.*, 636 F.3d 501, 506 (9th Cir. 2011) (affirming finding that "VeriCheck" was suggestive, reasoning "consumers must separate 'veri' from 'check' and reason that 'veri' is short for 'verification services'"); *Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 172 (4th Cir. 2006)

27

(finding that, "[i]n viewing the word 'doctor' to mean 'healing,' some imagination is necessary in order to deduce that 'healing' applies to the repair or installation of gas and windshields" and, as such, "glass doctor" was suggestive); *PayPal, Inc. v. PayPay, Inc.*, No. C-09-4494 EMC, 2010 WL 11706796, at *3 (N.D. Cal. July 27, 2010) (concluding "the PayPal name and stylized marks are more suggestive than fanciful (*i.e.*, a friend who helps in paying)").

The trademarks of "PayPal," "Laser Specialist," "Glass Doctor," "Citibank," and "VeriCheck" are all suggestive because there is more to these services than just what is literally identified in the trademarks. Likewise, "PayCargo" neither reveals nor conveys to consumers that it is providing a web-based service platform for logistics companies to facilitate the quick release of cargo, nor does it convey that the service will facilitate the "[p]rovision and management of credit loans through electronic means," the management of invoices and financial records, customer service, and dispute resolution.

Ultimately, however, Plaintiff need not prove that the PayCargo Marks are suggestive, as opposed to descriptive, because Defendants have limited their argument on appeal to the claim that the Marks are

generic, which they clearly are not. In addition, registration of the PayCargo Marks with the PTO relieves Plaintiff of the burden of proof on distinctiveness. This is because registration provides a mark with "a presumption of distinctiveness." *Royal Palm*, 950 F.3d at 785. And since the PTO three times registered the PayCargo Marks without requiring proof of secondary meaning, App.267 at 14; App.18-4 at 50-51, 74-79, 110-115; App.18-5 at 25-26, 39, 47-48; App.18-6 at 38-39, 49-51, 58-59, "the mark[s] [are] presumed to be inherently distinctive and thus at least suggestive," *Engineered Tax Servs.*, 958 F.3d at 1328.

Plaintiff, therefore, "had no burden to come forward with any affirmative evidence to that effect; to the contrary, [Defendants] had the burden to prove otherwise." *Royal Palm*, 950 F.3d at 785. Defendants make no effort to satisfy that burden on appeal.

Beyond the presumption of distinctiveness that they enjoy from registration, the PayCargo Marks also achieved incontestable status under 15 U.S.C. § 1065. App.171, ¶ 70. "Marks become incontestable once they have been registered on the Principal Register with the PTO for at least five years, among other statutory formalities." *FCOA LLC v. Foremost Title & Escrow Servs. LLC*, 57 F.4th 939, 949 n.13 (11th Cir.

2023). The PayCargo Marks met these statutory formalities, as they were registered for at least five years and then used for five continuous years, and an affidavit of incontestability was filed with the PTO. App.18-4 at 23; App.18-5 at 10; App.18-6 at 19. "Once a mark has achieved 'incontestable' status, its validity cannot be challenged on the grounds that it is merely descriptive, even if the challenger can show that the mark was improperly registered initially." *Dieter*, 880 F.2d at 328.

It is, therefore, unsurprising that Defendants have elected to abandon their claim that the PayCargo Marks are merely descriptive. Such a challenge is foreclosed by the registration and incontestability of the PayCargo Marks. *Id.* And for the reasons discussed above, Defendants' genericism challenge fares no better. Under prevailing law, as recently clarified by the Supreme Court in *Booking.com*, the PayCargo Marks are not generic, regardless of their registration or incontestability. 140 S. Ct. at 2304-07. The district court properly rejected Defendants' genericism challenge at summary judgment.

## B.    PayCargo Owns Its Registered Trademarks

PayCargo has standing to enforce all three PayCargo Marks. Defendants' argument to the contrary (Br.29-34) lacks record support.

30

Plaintiff owns the first two Marks by assignment and the third Mark as its original applicant.

### 1. PayCargo Marks '315 and '112 Were Transferred from Coihue to PayCargo

The Lanham Act grants standing to assert a claim for trademark infringement to the "registrant" of a trademark. 15 U.S.C. § 1114(1). The Act defines "registrant" to include the original registrant and its "assigns." 15 U.S.C. § 1127. Coihue, the prior trademark owner, applied for and received the first two Marks—'315 and '112—in 2007 and 2008, respectively. App.161, ¶¶ 5-6. On November 20, 2008, Coihue and EFS Transportation Services, Inc. entered into the Limited Liability Company Agreement of PayCargo, LLC ("LLC Agreement"), to create a joint venture that would, among other things, manage the PayCargo System. *Id.*, ¶ 8. The *Nunc Pro Tunc* Assignment recorded with the PTO on March 10, 2010, unambiguously assigns Marks '315 and '112 and their associated goodwill from Coihue to PayCargo effective November 20, 2008, the same date as the LLC Agreement. It provides:

> Assignor hereby assigns and transfers *nunc pro tunc* as of November 20, 2008 to Assignee all right, title and interest in and to the aforesaid Trademarks together with the goodwill of the business concerned in the goods and services for which the Trademarks are registered and used and all rights which

31

> Assignor has heretofore enjoyed thereunder, including common law rights and the right to sue for past infringement[.]

*Id.*, ¶ 9, Ex. 5 PYC9005075. The document defines the Assignor as Coihue, the Assignee as PayCargo, and the Trademarks as registration numbers 3347315 ('315) and 3419112 ('112). *Id.*

The district court properly rejected Defendants' effort to avoid the plain meaning of the *Nunc Pro Tunc* Assignment. App.244 at 10. Defendants simply repeat their unsuccessful argument on appeal. *See* Br.29-32. According to Defendants, because the LLC Agreement itself did not assign the Marks to Plaintiff, neither did the *Nunc Pro Tunc* Assignment. Unsurprisingly, Defendants provide no authority in support of this position, which would defeat the sole stated purpose of the Assignment, an impermissible approach to contract interpretation. *See Arthur Rutenberg Corp. v. Pasin*, 506 So. 2d 33, 35 (Fla. Dist. Ct. App. 1987) ("[C]ourts should endeavor to avoid interpretations which would contradict a contract's general purpose.").

Instead, Defendants focus on a recital preceding the operative provision that clarifies the parties' intent to make the assignment effective as of the date of the LLC Agreement. The recital provides:

32

> WHEREAS, as a result of the transactions contemplated by the Limited Liability Company Agreement entered into by Assignor and Assignee dated November 20, 2008 ("LLC Agreement"), Assignee acquired all of Assignor's rights in and to the Trademarks, and the goodwill associated with the Trademarks, as of the date stated above, and wishes to have the assignment thereof memorialized in this document.

*Id.* Defendants' argument is a red herring. Whether the LLC Agreement itself had the legal effect of transferring Marks '315 and '112 to PayCargo—which the recital does not even say, contrary to Defendants' suggestion—is irrelevant, because the *Nunc Pro Tunc* Assignment eventually accomplished the transfer. Indeed, the Assignment has no other purpose.

Moreover, "'whereas' clauses are not binding when the contract is otherwise unambiguous." *Whetstone Candy Co. v. Kraft Foods, Inc.,* 351 F.3d 1067, 1074 (11th Cir. 2003) (citing *Johnson v. Johnson,* 725 So.2d 1209, 1212–13 (Fla. Dist. Ct. App. 1999) (holding that whereas clauses "are not binding, operative provisions" and that "[u]nder Florida law, an operative clause of an agreement prevails over the recital clause when there is a discrepancy between the two")). The operative provision of the *Nunc Pro Tunc* Assignment establishes the parties' undisputed intent to assign the Marks. App.161, ¶ 9. Defendants do not even attempt to

33

argue that it is ambiguous, because it is not. Regardless of whether the LLC Agreement had the effect of assigning the Marks '315 and '112, therefore, the *Nunc Pro Tunc* Assignment did.

Nor is there anything inherently defective or suspect about a *nunc pro tunc* assignment in a trademark action. Courts consistently enforce such assignments to establish standing. *See*, *e.g.*, *Setai Hotel Acquisition, LLC v. Miami Beach Luxury Rentals, Inc.*, No. 16-21296-CIV, 2017 WL 3503371, at \*9 (S.D. Fla. Aug. 15, 2017); *Happy Feet USA, Inc. v. Burch*, No. 6:09-cv-1903, 2010 WL 11626536, at \*5 (M.D. Fla. Apr. 2, 2010).

Finally, recording an assignment with the PTO is *prima facie* evidence of its execution. *Id.*; *accord Sonista, Inc. v. Hsieh*, 348 F. Supp. 2d 1089, 1093 (N.D. Cal. 2004). As the district court reasoned, Defendants failed to "offer any evidence at all to support a claim that the *Nunc Pro Tunc* [Assignment] is not valid, much less evidence that would overcome the presumption that it is." App.244 at 10. The *Nunc Pro Tunc* Assignment is in writing, signed by representatives of the parties to be bound, duly recorded at the PTO, and expressly includes the Marks' goodwill. As the assignee, PayCargo stepped into the shoes of Coihue for all trademark-related rights. *See Carnival Brand Seafood Co. v.*

34

*Carnival Brands, Inc.*, 187 F.3d 1307, 1310 (11th Cir. 1999). And it is ultimately immaterial to this case whether the assignment was effective in 2010 or *nunc pro tunc* to 2008. Both predate this suit.

Thus, the district court properly concluded that there is no genuine dispute that Plaintiff owns Marks '315 and '112. App.244 at 10 n.5.

## 2. Plaintiff Registered and Owns the PayCargo Mark '069

Mark '069 was *registered* by and to Plaintiff, "PayCargo, LLC, a Delaware limited liability company." App.18-5 at 25. The registration of a trademark is "*prima facie* evidence of the validity . . . of the registrant's ownership of the mark [] and of the registrant's exclusive right to use the registered mark in commerce." 15 U.S.C. § 1115(a). Once a mark becomes incontestable, as Mark '069 is, the registration becomes "conclusive evidence" as to those same facts. 15 U.S.C. § 1115(b). As the district court concluded, App.244 at 10, Defendants present no evidence to overcome the *prima facie* evidence of ownership, let alone the conclusive proof of ownership bestowed on an incontestable mark under 15 U.S.C. § 1065.

Defendants' counterfactual argument is based on a scrivener's error in the *application* for the Mark, which named PayCargo, LLC, "a

corporation of Florida." App.18-5 at 44, 47. Plaintiff is a foreign limited liability company from Delaware registered to do business in Florida. App.163, ¶ 25. An Examiners' Amendment was issued on September 2, 2010, to correct the error, stating: "Applicant is PayCargo LLC, a limited liability company organized under the laws of *Delaware*." App.18-5 at 39 (emphasis added). Subsequent PTO documents consistently identify Plaintiff, a Delaware Limited Liability Company, as the Mark's registrant. *Id.* at 10-12, 25.

This amendment was completed by the PTO's examining attorney, after communicating with PayCargo's counsel of record on the application. *Id.* at 39. Upon obtaining consent from Plaintiff's counsel, the examiner amended the application to correct the error. *Id.* Such amendments are routine PTO practice. *See* Trademark Manual of Examination Practice, § 707.01. ("[A]n examining attorney may amend an application by examiner's amendment [] after securing approval of the amendment from the individual applicant, someone with legal authority to bind a juristic applicant, or the applicant's qualified practitioner by telephone, e-mail, or in person during an interview."); *Bon Vivant*

*Catering, Inc. v. Duke Univ.*, No. 1:13-cv-728, 2016 WL 3149725, at *11 n.14 (M.D.N.C. June 3, 2016) (describing same process).[13]

Defendants' argument that this was an ineffective means to assign or transfer a mark (Br.34) is off target. There was no transfer or attempt to assign the application from one entity to another. Rather, it was a straightforward correction of a scrivener's error, using the Trademark Office's established procedures to fix drafting errors in the original application. *See Commodores Entm't Corp. v. McClary*, 879 F.3d 1114, 1140-41 (11th Cir. 2018) (refusing to cancel a mark due to a mistake in the registration with the PTO that was "merely a misidentification" and concluding it would be "nonsensical that a typographical error on a trademark registration application would invalidate a federal registration of a trademark") (citing *U.S. Pioneer Elec. Corp. v. Evans Mktg., Inc.*, 1974 WL 20033, *2 183 U.S.P.Q. 613, 614 (P.T.O. Oct. 16, 1974) (holding that a mistake in the registration is not enough to cancel

---

[13] For the first time on appeal, Defendants cite 37 C.F.R. § 2.71(d) to challenge the amendment. But that provision expressly allows for amendments "to correct the name of the applicant," which is what occurred here. *Id.* In either event, Defendants cite no authority for disregarding an amendment approved by the PTO, especially after the PTO has registered a mark for more than five years.

a mark if the mistake amounts to "merely a misidentification of the proper name of the applicant in the original application")).

Unsurprisingly, Defendants fail to cite a single authority in which a court has refused to enforce a registered mark for a corrected scrivener's error like this. The district court, therefore, properly concluded that Defendants offered "no legal basis to support the claim that the correction of a scrivener's error requires a formal transfer or assignment of the intellectual property at issue." App.244 at 11. And the court correctly determined at summary judgment that Plaintiff is the registrant and owner of Mark '069.

### C.    CargoSprint's Fraud Claims Fail As A Matter Of Law.

A trademark applicant only commits fraud when it "knowingly makes false, material representations of fact in connection with an application for a registered mark." *Sovereign Military Hospitaller v. Fla. Priory*, 702 F.3d 1279, 1289 (11th Cir. 2012) (quoting *Angel Flight Ga., Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1209 (11th Cir. 2008)). Contrary to Defendants' accusations (Br.35-42), PayCargo did not obtain its Marks or their subsequent incontestable status by fraud.

What Defendants allege to be fraud is, at most, a lay person's

misunderstanding of the legal interpretation of the term "use in commerce." Defendants, nevertheless, ask the Court to infer fraudulent intent, without any evidence whatsoever that Coihue's or PayCargo's representative understood the evolving criteria for the "use in commerce" legal requirement, or intended to defraud the PTO in the absence of any motive to do so, as no other entity was using a similar mark at the time.[14] The district court properly rejected Defendants' argument as inconsistent with the record and the law. App.244 at 11-16; App.267 at 14.

### 1.    PayCargo Did Not Fraudulently Misrepresent the Date the Marks Were First Used in Commerce

Defendants failed to present sufficient evidence to create a genuine dispute as to their claim that Plaintiff or Coihue knowingly made fraudulent misrepresentations with the intent of deceiving the PTO when applying for the Marks. "There is no fraud if a false misrepresentation is occasioned by an honest misunderstanding or inadvertence without a willful intent to deceive." *In re Bose Corp.*, 580

---

[14] Defendants also attempted to have the district court cancel Plaintiff's Marks, but a motion for summary judgment or trial is not the proper vehicle for such a request. Defendants appear to be confusing the defenses provided for in Section 1115 of the Lanham Act with Section 1064. *Compare* 15 U.S.C. § 1115 *with* § 1064.

F.3d 1240, 1246 (Fed. Cir. 2009); *see Sovereign Military Hospitaller*, 702 F.3d at 1292. Any inaccuracy regarding the PayCargo Marks' date of first use in commerce was not made with any knowing or willful intent to deceive, and Defendants point to no evidence that suggests otherwise. *See Commodores Entm't*, 879 F.3d at 1140 (affirming judgment as a matter of law for trademark registrant where opposing party pointed to no evidence that registrant "knowingly made false representations of fact").

In March 2007, Coihue applied for the first Mark and represented to the PTO that it had been using the Mark in commerce since 2003. App.171, ¶¶ 65, 69. That representation was not inaccurate. Coihue's CFO, Mr. Crespo, filled out the form. *Id.* He is a lay person for whom English is a second language, and he intuitively understood the "use in commerce" requirement to be met with Coihue's use of the Mark in presentations to potential investors and customers and in test transactions, all of which occurred in 2003. *Id.*, ¶¶ 65, 69. The second and third Marks, applied for in December 2007 and May 2010 respectively, referred back to the first application and Mr. Crespo's and others' intuitive understanding of the term "use in commerce." *Id.*, ¶ 69.

40

In between registering the second and third Marks, the PayCargo System settled its first non-beta transaction in January 2009. *Id.*, ¶ 44.

Whether the first "use in commerce" of the PayCargo Marks occurred in 2003, when the Marks were first used in promotional materials and test transactions with potential clients, or in 2009, when the first non-beta transactions were executed, is a complex legal question. This Court's decision in *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1195 (11th Cir. 2001), points to the 2003 date, as the Court held that "a party may establish 'use in commerce' even in the absence of sales," and recognized that "promotional mailings coupled with advertiser and distributor solicitations" may satisfy the "use in commerce" requirement. *Id.* In contrast, the Federal Circuit's decision in *Couture v. Playdom, Inc.*, 778 F.3d 1379, 1381 (Fed. Cir. 2015), issued years *after* PayCargo's trademark applications, points to the 2009 date, as the court held that "use in commerce" means more than "open and notorious" use in prospective sales or investment presentations.[15]

---

[15] In *Playdom*, the Federal Circuit noted that the issue was unresolved prior to its decision. *Id.* at 1381 ("We have not previously had occasion to directly address whether the offering of a service, without actual provision of a service is sufficient to constitute use in commerce under Lanham Act § 45, 15 U.S.C. § 1127.").

Regardless of how this complex legal question is resolved, however, it cannot support a finding of fraud, because there is no evidence of knowledge or intent. *See Sovereign Military Hospitaller*, 702 F.3d at 1289 (defining fraud as when an applicant "knowingly makes false, material representations of fact in connection with an application for a registered mark") (quoting *Angel Flight Ga.,* 522 F.3d at 1209). A "party seeking to cancel a mark bears the burden of proving the alleged fraud by clear and convincing evidence." *Angel Flight*, 522 F.3d at 1209. They must demonstrate that the applicant had "a purpose or intent to deceive the PTO in the application for the mark." *Bose*, 580 F.3d at 1243, 1245; *accord Angel Flight*, 522 F.3d at 1209. "Subjective intent to deceive, however difficult it may be to prove, is an indispensable element in the analysis." *Sovereign Military Hospitaller*, 702 F.3d at 1289. "There is no room for speculation, inference or surmise[.]" *Bose*, 580 F.3d at 1243. "This is necessarily a heavy burden, and 'any doubt must be resolved against the charging party.'" *Sovereign Military Hospitaller*, 702 F.3d at 1289 (quoting *Bose*, 580 F.3d at 1243).

Defendants cannot meet this "heavy burden." *Id.* "[T]here is a material legal distinction between a 'false' representation and a

'fraudulent' one, the latter involving an intent to deceive, whereas the former may be occasioned by a misunderstanding, an inadvertence, or a mere negligent omission, or the like." *Bose*, 580 F.3d at 1243. To establish fraud, Defendants would have to prove—by clear and convincing evidence—that Plaintiff knew its use of the Marks in 2003 was insufficient to constitute "use in commerce" under 15 U.S.C. § 1115(a) and willfully intended to deceive the PTO by representing otherwise. *Id.* at 1243-45. Defendants presented no such evidence.

Indeed, all the evidence points the other way. No one disputes that the Marks were being used in commercial activity, and Mr. Crespo testified that he believed the Marks were being used in commerce. *See* App.171, ¶¶ 36, 37, 44, 65. Plaintiff also had no reason to misrepresent this information to the Trademark Office. No other company was using the PayCargo name, and it had no competition in the space, until Defendants entered several years later. App.18-1, ¶ 6 ("PayCargo was the first online service provider to offer ACH electronic freight payment transfer."); App.29 at 13 (conceding that CargoSprint and PayCargo are the "only two well-known choices" in the industry).

43

Nevertheless, Defendants ask the Court to "infer" fraudulent intent from Plaintiff's knowledge that it was not settling non-beta transactions on the PayCargo System when it filed the '315 and '112 applications in 2007, as the first non-beta transactions were settled in 2009. App.162 at 9-10. But knowing, on the one hand, that the PayCargo System had not yet performed a non-beta transaction, and on the other, that the Marks were not being "used in commerce," as that technical term was *subsequently* construed by the Federal Circuit in *Playdom*, are, of course, two very different things.

That is exactly what the Federal Circuit held in *Bose*, which this Court has endorsed,[16] when it concluded that Bose's false representation to the PTO that it was using the mark during the period in question was an honest misunderstanding that did not support a finding of deceptive intent. 580 F.3d at 1246-47. Bose's representative testified to believing that the representation about that date of first use in commerce was true, *id*. at 1246; so too did PayCargo's 30(b)(6) witness (who was also part of Coihue) and Mr. Crespo, App.171, ¶¶ 36, 37, 44, 65.

---

[16] *See Sovereign Military Hospitaller*, 702 F.3d at 1289.

Nor does Mr. Crespo's testimony support Defendants' position, contrary to their argument. *See* Br.38. In response to a question about why he submitted "substitute specimens," an issue that is unrelated to Defendants' fraud claim, Mr. Crespo explained that he answered the PTO's request and submitted the specimens because Coihue was "undergoing the process of registering the trademark" (Ex. D at 54:18-19) and "we were doing everything [that] was necessary to get – to get this passed" (*id.* at 56:12-13). Given the context of Mr. Crespo's testimony, it is beyond unreasonable for Defendants to construe his statement as anything resembling an admission that Coihue intended to make any inaccurate statements to obtain the registration. To the contrary, Mr. Crespo's testimony only establishes a good-faith commitment to responding to the PTO.

Defendants' reliance on *Spiral Direct, Inc. v. Basic Sports Apparel, Inc.*, 293 F. Supp. 3d 1334 (M.D. Fla. 2017), is similarly misplaced. In that case, an intent-to-deceive finding was based on the registrant's misleading statements in a related proceeding "intended to obfuscate" the date of first use. *Id.* at 1362-63. Similarly, in *Nationstar Mortgage LLC v. Ahmad*, which Defendants also cite, the Trademark Board relied

45

on evidence that the registrant lied about the brokerage services he offered, as he understood that he was not even licensed to hold himself out as a broker, to find a willful intent to deceive. 112 U.S.P.Q.2d 1361, 2014 WL 6480655, at *12-*15 (T.T.A.B. 2014). No such evidence of dishonesty or deception is present here. Mr. Crespo never misrepresented in the application or elsewhere, for example, that the PayCargo System was settling non-beta transactions when it was not. And there is no evidence to suggest Mr. Crespo understood the "nuance of trademark law" concerning the technical requirements of "use in commerce." *Ahmad*, 2014 WL 6480655, at *14. As the district court concluded, Defendants fall woefully short of meeting their "heavy burden" of establishing subjective fraudulent intent by clear and convincing evidence. App.244 at 15-16.

46

## 2.    The '315 Registration's Incontestable Status Was Not Fraudulently Obtained

There is also no evidence, much less clear and convincing evidence, suggesting that PayCargo knew its Marks had not been used in commerce for five years when it filed its declaration of incontestability for Mark '315 on July 10, 2013. Defendants present no evidence from which to draw an inference of the requisite intent or fraud.

Instead, the facts again demonstrate that PayCargo believed, as stated in all its prior applications to the PTO, that the Mark had been used in commerce since 2003. *See* App.171, ¶ 69. Had PayCargo known that its use of the Marks did not satisfy the five-year requirement for incontestability, it simply would have waited six months to file the requisite paperwork. There was no commercial reason to obtain incontestable status six months early. In 2013, PayCargo had no knowledge of PayAirCargo's existence and was aware of no other entity using its Marks. App.171, ¶ 71; App. 18-1 ¶ 13. Nor did Plaintiff immediately initiate any action against PayAirCargo to take advantage of the Mark's incontestability. So, it would defy logic to draw an inference of fraud under these circumstances.

47

Nor is there any basis to infer fraud from the fact that PayCargo was represented by legal counsel, contrary to Defendants' argument.[17] *See* Br.40. If anything, employing counsel is an indicium of the *lack* of fraud. *See In re Sendecky*, 283 B.R. 760, 765 (B.A.P. 8th Cir. 2002); *Cuisinarts, Inc. v. Robot-Coupe Int'l Corp.*, 580 F. Supp. 634, 638 (S.D.N.Y. 1984).

The registration is also not void *ab initio*, contrary to Defendants' claim. Br.40. Because the Mark has been registered for more than five years on the principal register, it may be cancelled only if:

> the registered mark becomes the generic name for the goods or services, or a portion thereof, for which it is registered, or is functional, or has been abandoned, or its registration was obtained fraudulently or contrary to [statutes not applicable here], or if the registered mark is being used by, or with the permission of, the registrant so as to misrepresent the source of the goods or services on or in connection with which the mark is used.

15 U.S.C. § 1064(3). "Void *ab initio* . . . is not one of these [listed] reasons."

*Somera Cap. Mgmt., LLC v. Somera Rd., Inc.*, No. 19-CIV-8291, 2020 WL

---

[17] Specifically, Defendants state that "with the aid of counsel, Appellee was aware that this filing would render the '315 Registration immune from certain defenses." Br.40. But the cited evidence shows only that Plaintiff's counsel assisted the filing, nothing about Plaintiff's awareness of anything. App.163, ¶ 41.

2506352, at *3 (S.D.N.Y. May 15, 2020); *Spiral Direct*, 293 F. Supp. 3d at 1372 (holding void *ab initio* defense failed under Section 1064). The Lanham Act, therefore, "bars [Defendants] from bringing a claim that [the] [M]ark is void *ab initio*." *NetJets Inc. v. IntelliJet Grp.*, LLC, 678 F. App'x 343, 350 (6th Cir. 2017).[18]

Defendants' reliance on *Aycock Engineering, Inc. v. Airflite, Inc.*, 560 F.3d 1350, 1354 (Fed. Cir. 2009), for their void *ab initio* argument is misplaced. *Ayock* involved a mark listed on the *supplemental* register, not the *principal* register. *Id.* This difference is critical. Marks on the supplemental register can be cancelled at any time for any reason. *See* 37 C.F.R. § 2.111(b). The same is not true of marks on the principal register, which 15 U.S.C. § 1064 controls.

Moreover, Defendants have not filed "[a] petition to cancel a registration of a mark," as required by the statute. 15 U.S.C. § 1064. And the proper remedy for obtaining incontestability by fraud, for which there

---

[18] Unlike functionality, which this Court addressed in *Wilhelm Pudenz, GmbH v. Littlefuse, Inc.*, 177 F.3d 1204, 1210 (11th Cir. 1999), *void ab initio* is not a well-established trademark defense that "predates the Lanham Act," *id.*, and thus its omission from the enumerated defenses in the statute makes it unavailable, *NetJets Inc.*, 678 F. App'x at 349.

is no evidence here, is for the registrant to lose the benefits of incontestability, but not the rebuttable presumptions that come from registration. *Brittingham v. Jenkins*, 914 F.2d 447, 454–55 (4th Cir. 1990). As explained above, Defendants cannot rebut those registration presumptions. The district court properly rejected Defendants' fraud claims concerning Mark '315.

### 3.    The '069 Registration Was Not Procured By Fraud

Aware that any inaccurate representation of first use in PayCargo's 2011 trademark registration was immaterial, as the Marks had, at that point, been used in commerce for over a year, *Angel Flight*, 522 F.3d at 1210 ("A misstatement of the date of first use in the application is not fatal to the securing of a valid registration as long as there has been valid use of the mark prior to the filing date."), Defendants argue that PayCargo's third Mark was fraudulently obtained because PayCargo fraudulently represented to the PTO that it owned the '315 and '112 Marks. *See* Br.41-42. As explained above, however, PayCargo does own Marks '315 and '112. They were assigned by Coihue via the *Nunc Pro Tunc* Assignment. So, PayCargo did not make any inaccurate representations.

50

Moreover, even if the *Nunc Pro Tunc* Assignment, contrary to its plain terms, somehow did not assign the Marks to PayCargo, Defendants provide *no* evidence whatsoever—much less enough to satisfy the clear and convincing standard—that PayCargo knew the assignment was ineffective or acted with fraudulent intent when it applied for the Mark. *See Sovereign Military Hospitaller*, 702 F.3d at 1289. This is fatal to Defendants' fraud defense, because "a valid trademark registration requires only that the registrant 'believe' himself to be the owner of the mark." *Sovereign Order St. John v. Grady*, 119 F.3d 1236, 1241 (6th Cir. 1997); *accord Sovereign Military Hospitaller*, 702 F.3d at 1292.

The district court correctly granted Plaintiff summary judgment on the Lanham Act claims. Accordingly, its ruling should be affirmed.

## II. JUDGMENT IN FAVOR OF PAYCARGO ON ITS BREACH-OF-CONTRACT CLAIM SHOULD BE AFFIRMED

### A. Defendants Have Waived Their Arguments On The Breach-Of-Contract Claim

Defendants' challenge to the adverse judgment on Plaintiff's breach-of-contract claim is out of place. It is included in the section of their brief attacking the district court's entry of summary judgment on Plaintiff's Lanham Act claims. *See* Br.42-47. But the district court did

51

not enter summary judgment against Defendants on the breach-of-contract claim or their affirmative defenses to that claim. *See* App.267. Rather, the court denied Plaintiff's motion for summary judgment on the breach-of-contract claim, *id.* at 17, denied Defendants' motion for summary judgment on their affirmative defenses to the claim, App.244 at 18-21, and held a bench trial on the claim, App.354 at 4, after which the court entered judgment against Defendants, App.366.

At trial, Defendants neither pressed any of its affirmative defenses, nor presented additional evidence supporting the defenses. *See* App.354 at 13. Defendants' counsel, for example, never mentioned the acquiescence, estoppel, or fraudulent misrepresentation defenses during closing argument. App.308 at 47-88.[19] Nor did Defendants raise any of the defenses in their proposed findings of fact and conclusions of law. App.322.

Defendants' dual failure to advance their affirmative defenses at trial or to raise any arguments on appeal based on the trial record should preclude their efforts to disturb the district court's final judgment on the

---

[19] Defendants' counsel uttered the words "accord and satisfaction" once during his closing argument, App.308 at 53, but then failed to discuss the defense or evidence pertaining to it.

breach-of-contract claim. *See Lind v. United Parcel Serv., Inc.*, 254 F.3d 1281, 1283, 1286 n.6 (11th Cir. 2001) (holding that appellant waived any argument challenging finding after a bench trial when appellant only challenged the earlier denial of her motion for summary judgment). Ordinarily, this Court "will not review the pretrial denial of a motion for summary judgment after a full trial and judgment on the merits." *Id.* at 1286. This general rule follows from the established principle that "[o]nce the case proceeds to trial, the full record developed in court supersedes the record existing at the time of the summary judgment motion." *Ortiz v. Jordan*, 562 U.S. 180, 184 (2011).

Contrary to the directive of *Ortiz*, Defendants rely entirely on "the record existing at the time of the summary judgment motion," *id.*, to argue that the district court should have accepted their affirmative defenses. *See* Br.42-47. But the summary-judgment record was "supersede[d]" by the trial record, *Ortiz*, 552 U.S. at 184, which Defendants fail to address on appeal. This is likely because "no additional evidence was advanced" at trial in support of Defendants' affirmative defenses. App.354 at 13. In either event, Defendants' failure to present any argument in their initial brief concerning the trial record

53

or the district court's post-trial finding waives such a challenge on appeal. *See Lind*, 254 F.3d at 1283 n.2.

The Supreme Court's recent decision in *Dupree v. Younger*, No. 22-210, 2023 WL 3632755 (U.S. May 25, 2023), does not change this result. In *Dupree*, the Court reaffirmed that "a district court's assessment of the facts based on the summary-judgment record becomes ancient history and is not subject to appeal," *id.* at *4 (quotations omitted), but also declined to extend that rule to "pure questions of law resolved in an order denying summary judgment," *id.* Thus, "a summary-judgment motion is sufficient to preserve legal but not factual claims" for appellate review. *Id.*

*Dupree* does not help Defendants because the district court's denial of their motion for summary judgment did not rest entirely on "pure questions of law." *Id.* Rather, the court ruled that Defendants failed to present evidence on their acquiescence and estoppel defenses concerning the actual breach-of-contract claims that Plaintiff asserted, App.244 at 19; failed to present sufficient evidence on their accord and satisfaction defenses "to show there was a meeting of the minds" or that "there is no issue of material fact as to Defendants' satisfaction of its warrant to

54

Plaintiff that PayAirCargo was 'not being used in any fashion,'" *id.* at 21; and failed on their fraudulent misrepresentation defense to "carr[y] their burden to prove there is no material dispute as to Plaintiff's non-ownership of the marks," *id.* These rulings rested on Defendants' evidentiary failure to demonstrate the absence of genuine disputes of fact, not legal determinations made "without reference to any disputed facts." *Dupree*, 2023 WL 3632755, at *4. Defendants' mere presentation of their defenses in their denied motion for summary judgment, therefore, did not preserve the issues for appeal. *See id.*

This is particularly clear with respect to the accord and satisfaction defense. At summary judgment, the district court identified specific factual disputes that remained unresolved—whether "Defendants did not understand what they agreed to cure," thus precluding a necessary "meeting of the minds," or whether "Defendants *did* understand what was implied by the July 25 representation" and then satisfied their "warrant to Plaintiff that PayAirCargo was 'not being used in any fashion,'" App.244 at 21. After trial, the district court noted Defendants' failure to present any "additional evidence," and thus found "no accord and satisfaction from Defendants' performance on the second cease and

55

desist letter." App.354 at 13. Defendants' failure to acknowledge, let alone challenge, this post-trial ruling waives any argument on appeal. *See Lind*, 254 F.3d at 1283 n.2.

## B. Defendants' Affirmative Defenses Are Unavailing

Even if Defendants had preserved the argument for appeal, their affirmative defenses provide no reason to overturn the district court's judgment on the breach-of-contract claim.

*1.* As the district court reasoned, the acquiescence and estoppel defenses fail because they misapprehend Plaintiff's breach-of-contract claim. App.244 at 19. Defendants contend that they cannot be held liable for including the PayAirCargo name on customer invoices, from January 1, 2017, through May 31, 2017, because the settlement permitted them to do so. *See* Br.42-44. But Plaintiff's breach-of-contract claim does not assert that this conduct—from January 1, 2017, through May 31, 2017— violated the settlement. App.100, ¶ 118. Rather, Plaintiff asserts that Defendants breached the agreement by failing to "cease use of the 'PayAirCargo' name by May 31, 2017." *Id.* Thus, as the district court concluded, Plaintiff's breach-of-contract claim "is based on conduct that came *after* May 31, 2017, not before," so the acquiescence and estoppel

56

affirmative defenses are inapplicable. App.244 at 19. In addition, the district court declined to award Plaintiff any profits that Defendants earned from January 1, 2017, through, May 31, 2017, App.354 at 16, so Defendants have no basis to seek any relief from the judgment based on these defenses.

*2.* Defendants' affirmative defense of fraudulent misrepresentation (Br.46-47) fares no better. It rests entirely on Defendants' disproven claim that Plaintiff did not own the PayCargo Marks when the parties entered into the settlement, in 2016. *Id.* But as explained in section I.B., *supra*, Plaintiffs owned all three PayCargo Marks because the *Nunc Pro Tunc* Assignment was effective to transfer Marks '315 and '112 to Plaintiff, and Plaintiff itself registered Mark '069—all of which occurred years before the settlement. So, there was no misrepresentation.

The defense also fails because Defendants point to no evidence suggesting that Plaintiff knew that it did not own the Marks, as would be required to establish fraud. *See Ibarra v. Izaguirre*, 985 So.2d 1117, 1119 (Fla. Dist. Ct. App. 2008). Indeed, as established above, the Assignment and registration vested Plaintiff with ownership of the Marks.

Moreover, the settlement does not contain a unilateral representation by PayCargo that it is the owner of the Marks. Rather *both* Parties acknowledged the fact. *See* App.100-1 at 1. Defendants, who were represented by counsel (App.171, ¶¶ 73-74), were well-equipped to investigate the trademark registrations before executing the settlement. Fraud, as alleged by Defendants, is waived when "a party should have discovered the [alleged] fraud through ordinary diligence." *Al-Ghena Int'l Corp. v. Radwan*, 698 F. App'x 997, 1000 (11th Cir. 2017) (quoting *Zurstrassen v. Stonier*, 786 So.2d 65, 70 (Fla. Dist. Ct. App. 2001)).

**3.** Finally, the accord and satisfaction defense finds no factual support in the record, as the district court determined. *See* App.244 at 21; App.354 at 13. The defense stems from the second cease-and-desist letter that Plaintiff sent Defendants on July 10, 2018, in which Plaintiff represented that it "did not wish to initiate litigation." *See* Br.44-45. But Defendants cannot establish, as they must under Florida law to maintain the defense, "the elements of a normal contract, which include offer, acceptance, and consideration," or that they performed in satisfaction of a new agreement. *Air Prod. & Chems., Inc. v. Louisiana Land & Expl. Co.*, 806 F.2d 1524, 1529 (11th Cir. 1986) .

As the district court reasoned (App.354 at 12-13), and contrary to Defendants' argument on appeal (Br.45), the letter dated July 10, 2018, was not limited to the infringing CargoSprint invoices, so Defendants' removal of "PayAirCago" from the invoices did not result in an accord and satisfaction. The letter "demand[ed] that [Defendants] immediately cease and desist from using the PayAirCargo name and . . . take whatever proactive measures are necessary to ensure that breaches of the settlement agreement do not continue." App.100-6. This is not a superseding agreement to not initiate litigation.

Even so, it is equally clear that Defendants failed to perform in satisfaction of the assurance that "that PayAirCargo is not being used in any capacity at this time." App.100-7. Defendants continued sending payment receipts to customers purporting to come from support@payaircargo.com, responding to emails sent to an @payaircargo.com email extension, and using the PayAirCargo name in emails to customers, email signature blocks, social media, at least one credit card processing account, DockenRoll (a scheduling system used by Lufthansa Cargo), and other third party accounts. Doc.238. ¶¶ 48-52, 58-65, 67-77; App.325-1. There was no accord and satisfaction. *See Wolowitz*

59

*v. Thoroughbred Motors, Inc.*, 765 So. 2d 920, 923 (Fla. Dist. Ct. App. 2000).

## III. THE EXCLUSION OF DEFENDANTS' SALESFORCE DATABASE SHOULD BE AFFIRMED

Defendants attack the district court's refusal to admit 60 gigabytes of predominantly irrelevant, undifferentiated data comprising the entirety of Defendants' Salesforce database. But the relevant portions of the data were admitted, Defendants declined to submit additional discrete exhibits, and the court provided an alternative, unchallenged basis for excluding Defendants' evidence pertaining to costs. Defendants cannot demonstrate that the district court erred, let alone reversibly so.

To successfully challenge a judgment on the basis of a district court's evidentiary ruling, "a party must follow a three-step process." *United States v. Stephens*, 365 F.3d 967, 974 (11th Cir. 2004). First, it must demonstrate either that its claim was adequately preserved or that the ruling constituted plain error. *See* Fed. R. Evid. 103(a), (d). Second, it must establish that the district court abused its discretion in interpreting or applying an evidentiary rule. *See United States v. Todd*, 108 F.3d 1329, 1331 (11th Cir. 1997). Finally, it must establish that this error "affected . . . a substantial right." Fed. R. Evid. 103(a). Defendants fail at every

turn.

At the first step, Defendants failed to preserve their claim of error because they did not adequately provide an offer of proof, as required by Rule 103(a)(2). Although Defendants generally identified the evidence as Defendants' entire Salesforce database, they did not demonstrate "the substance" of what the evidence would show or how it would have been "helpful." *United States v. Winkle*, 587 F.2d 705, 710 (5th Cir. 1979). Rather, Defendants' counsel vaguely claimed that it would "provide a foundation for the profit and loss statements" and "short circuit an argument that there was an insufficient amount of data or evidence to support what our experts have relied on." App.313 at 102-03. When the court correctly observed that "to the extent this contains 60 gigabytes of, potentially, 99 percent of irrelevant data, I have no way of quantifying its relevance," and then invited Defendants to advance "pieces of [the database] that are relevant and derived from Salesforce," Defendants conceded that such relevant subsets of the database already "ha[d] been advanced by plaintiff," and provided no explanation for how the rest of the database would have any non-cumulative probative value. *Id.* Nor do Defendants do so on appeal.

61

At the second step, Defendants cannot establish that the court abused its discretion. Rule 403 authorizes the exclusion of evidence when its probative value is substantially outweighed by a danger of "undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. It is difficult to imagine a situation more squarely calling for the application of Rule 403 than a request to admit an entire database spanning 60 gigabytes when 99% of it is irrelevant, particularly when the offering party is given an opportunity to present discrete parts of the database that are relevant and has conceded on the record that such evidence has already been admitted. App.313 at 103.[20]

At the last step, perhaps most importantly, Defendants cannot show that the exclusion of the undifferentiated database affected their substantial rights. Under the Lanham Act, a plaintiff seeking disgorgement bears the initial burden of proving "the infringer's sales," and then the burden "shifts to the defendant, which must prove its expenses and other deductions from gross sales." *Wesco Mfg., Inc. v.*

---

[20] Rule 106, which concerns completeness, does not displace a court's discretion to exclude cumulative or wasteful evidence. *See U.S. Football League v. Nat'l Football League*, 842 F.2d 1335, 1375 (2d Cir. 1988).

62

*Tropical Attractions of Palm Beach, Inc.*, 833 F.2d 1484, 1488 (11th Cir. 1987).   Both parties primarily relied on testimony from accounting experts to present evidence concerning CargoSprint's gross sales and deductible expenses.   *See* Doc.314 at 152-227 (Plaintiff's expert); Doc.311 at 16-93 (Defendants' expert).   It is well established that evidence need not be admitted or even admissible for an expert to rely on it in forming an opinion.   *See Carrizosa v. Chiquita Brands Int'l, Inc.*, 47 F.4th 1278, 1322–23 (11th Cir. 2022).   So, to the extent Defendants wished to have their expert provide additional testimony on what underpinned his opinions, it was not necessary for the database to be admitted.

The court simply found the opinions of Plaintiff's expert, Mr. Mukamal, to be more reliable and better "supported by substantial evidence" than those offered by Defendants' expert, Mr. Plumpe.   App.354 at 15.   Defendants do not explain how dumping 60 gigabytes of an undifferentiated database on the record would have altered this conclusion.   Indeed, it is not even clear that the evidence in such form could have been accessed or evaluated.

More precisely, Defendants make no effort to demonstrate which categories or amount of expenses the admission of the database would

63

have supported or affected. Mr. Mukamal walked through the differences between the expenses he deducted and those that Mr. Plumpe deducted. Doc.314 at 218:7; 224:7; P-270 (expense reconciliation trial exhibit). Mr. Mukamal excluded, for example, $1,296,956 in expenses that Defendants allocated to a product unconnected to the service that generated infringing revenue. Doc.314 at 220:1-23; P-270. Likewise, Mr. Mukamal excluded $1,114,528 in unallocated expenses for "contract labor." P-270. Defendants never explained—to the district court or on appeal—how the admission of the entire database would have turned these unrelated expenses into properly deductible expenses. Nor did they elicit such testimony from their expert, Mr. Plumpe, who did not even review the Salesforce database in formulating his initial opinions. Doc.310 at 10:11-12:16. Had there been additional pieces of data from Salesforce that supported Mr. Plumpe's opinions, Defendants could have asked him about them or submitted them as separate exhibits, as the district court invited, App.313 at 103—but they failed to do so.

Moreover, given Defendants' concession that the relevant pieces of the database were already in the record, App.313 at 103, admitting the entirety of the database would have been cumulative at best. The

64

exclusion of evidence that "would have been cumulative" does not affect the substantial rights of a party. *Foster v. Ford Motor Co.*, 621 F.2d 715, 721 (5th Cir. 1980).

Finally, Defendants cannot show that the exclusion of the database as inadmissible affected their substantial rights because the court provided a separate rationale for excluding "evidence pertaining to costs"—as a sanction for Defendants' bad-faith alteration of documents. App.354 at 11 n.8; App.353 at 15. The sanction extended to "data stored in Salesforce and the expert's opinion based thereon." App.353 at 15. Defendants do not challenge this alternative basis for excluding the evidence of costs in the database. *See* Br.48-49. On that unchallenged basis alone, this Court should affirm the district court's evidentiary ruling. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680–83 (11th Cir. 2014) (determining that the appellants had abandoned any challenge to the district court's alternative bases for ruling against them by failing to brief those issues on appeal).

The Lanham Act ultimately vests district courts with "broad discretion" to craft an equitable disgorgement award. *Burger King Corp. v. Mason*, 855 F.2d 779, 782 (11th Cir. 1988). Defendants cannot

65

demonstrate that the award would have been any different in this case with the admission of its entire Salesforce database. The district court's evidentiary ruling should be affirmed.

## IV. THE AWARD OF ATTORNEYS' FEES SHOULD BE AFFIRMED

The district court awarded Plaintiff attorneys' fees based on its finding, under 15 U.S.C. § 1117, that this is an "exceptional case." App.354 at 19-20. The district court based its finding on the extended length of time—almost *four years*—during which Defendants "continued to use the infringing name" after Plaintiff demanded they stop; Defendants' initial opposition to a preliminary injunction in this case, despite clear evidence of continued infringement; and Defendants' repeated violation of the preliminary injunction, which resulted in two unchallenged contempt findings. *Id.* at 20. Particularly given the extensive evidence presented at trial concerning Defendants' willful infringement from the outset, as well as their revelry in the actual confusion they actively fostered, the record provided abundant support for the district court's finding that "[t]he infringement was willful, pervasive, and relentless for several years." App.354 at 20.

66

Under these circumstances, the district court was well within its discretion to award Plaintiff attorneys' fees under 15 U.S.C. § 1117. *See Tobinick v. Novella*, 884 F.3d 1110, 1117-18 (11th Cir. 2018) (relaxing standard for "exceptional cases" to require "only that a case 'stands out from others,' either based on the strength of the litigating positions or the manner in which the case was litigated") (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 555 (2014) (defining litigation-related misconduct to include "willful infringement" and "misconduct during the litigation")). Defendants cite no authority vacating a fee award as an abuse of discretion in the face of such "willful, pervasive, and relentless" infringement. App.354 at 20.

## CONCLUSION

For the foregoing reasons, this Court should affirm the judgment in favor of PayCargo.

Respectfully submitted,

Peter Prieto
Matthew P. Weinshall
**Podhurst Orseck, P.A.**
Suntrust International Center
One S.E. 3rd Avenue, Suite 2300
Miami, Florida 33131
pprieto@podhurst.com
mweinshall@podhurst.com

Ann G. Fort
**Eversheds Sutherland (US)
LLP**
999 Peachtree St. NE, Suite 2300
Atlanta, GA 30309
Phone: 404-853-8000
annfort@eversheds-
sutherland.com

*Counsel for Plaintiff*

68

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 12,922 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word 2013 in Century Schoolbook 14-point font, a proportionally spaced typeface.

*s/ Matthew P. Weinshall*
MATTHEW P. WEINSHALL

**CERTIFICATE OF SERVICE**

I hereby certify that on May 30, 2023, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*s/ Matthew P. Weinshall*
MATTHEW P. WEINSHALL